IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PAULA BLAIR, ANDREA ROBINSON, and FALECHIA HARRIS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

RENT-A-CENTER, INC., a Delaware corporation, RENT-A-CENTER WEST, INC., a Delaware corporation, and DOES 1–50, inclusive,

Defendants.

No. C 17-02335 WHA

**ORDER RE MOTION TO COMPEL ARBITRATION, STRIKE CLASS ACTION CLAIMS, AND STAY PROCEEDINGS**

**INTRODUCTION**

In this putative consumer class action, defendant corporations move to compel arbitration, stay court proceedings, and strike class action claims. Plaintiffs oppose. For the reasons herein, defendants' motion to compel arbitration is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motions to strike one plaintiff's class action claims is **GRANTED**. Defendants' motion to stay is **DENIED**.

**STATEMENT**

This action arises from rent-to-own agreements, which plaintiffs Paula Blair, Andrea Robinson, and Falechia Harris contend set prices in excess of the maximum installment payment rates allowable under California law.

Defendants Rent-A-Center, Inc., and Rent-A-Center West, Inc. (collectively "RAC") own and manage rent-to-own stores throughout California, which rent household merchandise (*e.g.*, appliances, electronics, furniture) to consumers for a weekly, bi-weekly, or monthly fee. After a specified time period, if all payments have been made the consumer will own the merchandise. These agreements also set forth a cash price at which consumers can purchase the item outright before the rent-to-own period has ended (Sec. Amd. Compl. ¶¶ 11–13).

The terms of these rent-to-own agreements are set forth in written contracts between the consumer and RAC, which are signed by the consumer at the point of sale. The consumer is also given a separate arbitration agreement when she makes a purchase, which she is likewise asked to sign (*id.* ¶¶ 11–13, 59).

Plaintiff Blair signed an arbitration agreement in connection with her 2015 purchase of a window-unit air conditioner, which is the document from which RAC's motion to compel arbitration arises. RAC has not been able to locate signed arbitration agreements for either of the other two named plaintiffs, and they are therefore not subject to the motion to compel. Moreover, plaintiff Blair entered into a second agreement with RAC in 2016, but in connection with that purchase opted out of arbitration, so that agreement is likewise not subject to RAC's motion to compel (*id.* ¶¶ 41, 47, 59–64, 68–69; Exhs. 30; Dkt. No. 54 at 1).

Blair's 2015 arbitration agreement provided that either party may elect to arbitrate "claims arising under, arising out of, or relating in any way to any Consumer Contract," or "claims that are based on any legal theory whatsoever, including . . . any statute, regulation or ordinance" (Dkt. No. 22-1 ¶ B). In a subsection entitled "Requirement of Individual Arbitration" the agreement provided that, in the event arbitration is selected, it "shall be conducted on an individual basis" and that "[t]here will be no right or authority for any dispute to be brought, heard, or arbitrated as a class, collective, mass, private attorney general, or representative action" (*id.* ¶ D). The agreement delegated interpretation of the validity of the paragraph requiring individual arbitration to a court, and provided that "any such court challenge shall be governed by the law of the customer's mailing address" — here, California law (*ibid.*; Sec. Amd. Compl. ¶ 3). "If there is a final judicial determination that applicable law

2

precludes enforcement of [the individual arbitration paragraph's] limitations as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court" (Dkt. No. 22-1 ¶ D). Plaintiff Blair filed this action in the Superior Court for the County of Alameda in April 2017 seeking relief for violations of (1) the Karnette Rental-Purchase Act, (2) the California Consumers Legal Remedies Act ("CLRA"), (3) Usury, (4) Section 17200 of the California Business and Professions Code, and (5) Unjust Enrichment. RAC then removed the action to federal court pursuant to the Class Action Fairness Act. In May, Blair filed an amended complaint dropping her unjust enrichment claim. RAC then brought the instant motion to compel Blair's suit to arbitration, to strike the class action claims arising from her 2015 agreement, and to stay Blair's claims arising from her 2016 purchase (from which she opted out of arbitration). While this motion has been pending, Blair amended her complaint a second time to add plaintiffs Robinson and Harris, though as stated, RAC has not moved to compel their claims to arbitration. This order follows full briefing and oral argument.

## ANALYSIS

### 1. ARBITRATION AGREEMENT.

RAC's motion to compel arbitration is governed by the Federal Arbitration Act. The FAA requires the resolution of two "gateway" issues: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). If a valid arbitration clause exists, arbitration is mandatory. But, like other contracts, arbitration clauses "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (citations and quotations omitted).

One such contract defense is that "a law established for a public reason cannot be contravened by a private agreement." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 962 (2017) (citations and quotations omitted). *McGill* found that an arbitration agreement, which prohibited plaintiffs from seeking a public injunction — a remedy provided for under certain

3

California consumer protection laws — was invalid because it "seriously compromise[d] the public purposes [the laws] were intended to serve." *Ibid*.

Blair argues that under *McGill*, her claims, each of which seek public injunctive relief, cannot be waived pursuant to an arbitration agreement. Since paragraph D of the arbitration agreement purports to waive these claims, she argues, that provision must be invalidated, and, according to the terms of the agreement, the claims must be litigated in court.

Blair's argument presents three questions: *first*, whether her claims carry statutorily-imposed injunctive remedies such that they fall within the scope of *McGill*, *second* whether *McGill* is preempted by the FAA, and *third*, whether the RAC arbitration agreement prohibits Blair from seeking a public injunction in any forum, and is therefore invalid under *McGill*.

**A. Statutory Public Injunctive Relief.**

Blair's claims all seek a "public injunction" on behalf of the people of California (Sec. Amd. Compl. ¶¶ 89, 96, 104; Prayer ¶ 1). Merely declaring that a claim seeks a public injunction, however, is not sufficient to bring that claim within the bounds of the rule set forth in *McGill*. Rather, *McGill* limited invalidity to claims which confer *by statute* the right to seek a *public* injunction.

To determine whether a statute provides for public injunctive relief, *McGill* considered whether it has a public purpose, and, in turn, whether, in crafting the law, the California legislature provided that a private individual could seek an injunction that would "by and large benefit[] the general public and [] benefit[] the plaintiff, if at all, only incidentally and/or as a member of the general public." *Id.* at 955 (citations and quotations omitted). *McGill* found that the CLRA, Section 17200 of the California Business and Professions Code, and the California False Advertising Law all provide for *public* injunctive relief, and therefore a plaintiff's right to seek an injunction pursuant to these laws cannot be waived through an arbitration agreement. *Id.* at 954–55.

Drawing upon two earlier California Supreme Court decisions — *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal. 4th 303 (2003), and *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066 (2003) — *McGill* articulated certain common features of the statutes it was analyzing that

4

brought them within the "public injunction" exception. As an initial matter, each expressly provided for injunctive relief. *McGill*, 2 Cal. 5th at 965; *see* Cal. Civ. Code § 1770; Cal. Bus. & Prof. Code § 17203 and § 17535.

Additionally, each contained provisions denoting its *public* purpose. In enacting the CLRA, for example, the legislature stated that it "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices . . . ." Cal. Civ. Code § 1760. To that end, any waiver of its provisions, including waiver of injunctive relief, "is contrary to public policy and shall be unenforceable and void." *Id.* § 1751. Similarly, Section 17200 was intended to "safeguard the public against . . . unfair, dishonest, deceptive, destructive fraudulent and discriminatory practices," Cal. Bus.& Prof. Code § 17001, and the False Advertising Law at Section 17500 prohibited "untrue or misleading" statements designed to "induce the public to enter into any obligation" to purchase goods and services. Moreover, *McGill* observed that both Section 17200 and the False Advertising Law are enforceable not only by the individual who suffered injury, but also by government officials who can seek injunctive relief on behalf of the public at large, further demonstrating their public purpose. *McGill*, 2 Cal. 5th at 954-55; Cal. Bus. & Prof. Code § 17204 and § 17535.

Finally*, McGill* observed, when a plaintiff seeks injunctive relief under these laws, their benefits "by and large do not accrue to that party, but to the general public in danger of being victimized by the same deceptive practices as the plaintiff suffered." *Broughton*, 21 Cal. 4th 1066 at 1080. This is so "because the plaintiff has already been injured, allegedly, by such practices and [is] aware of them." *McGill*, 2 Cal. 5th at 955. The evident purpose of such relief, therefore, "is not to resolve a private dispute, but to remedy a public wrong." *Broughton*, 21 Cal. 4th at 1080. These features, *McGill* held, demonstrate the legislature's intent to provide for public injunctive relief.

Here, Blair seeks public injunctive relief under four laws: (1) Section 17200, (2) the CLRA, (3) the Karnette Rental-Purchase Act, and (4) usury under Section 1(1) of Article XV of the California Constitution. The first two were considered in *McGill* and the California

5

Supreme Court determined that they provided injunctive remedies that were by and large for the benefit of the public, and as such could not be waived by contract. So too here.

The latter two require further analysis to determine whether they fall within the class of public injunctive laws set forth in *McGill*. Applying the principles in *McGill*, this order finds that the Karnette Rental-Purchase Act provides for public injunctive relief, whereas California's usury law does not.

Like the laws considered in *McGill*, the Karenette Rental-Purchase Act has an enumerated public purpose — to "ensure that consumers are protected from misrepresentations and unfair dealings" and to "prohibit unfair or unconscionable conduct toward consumers in connection with rental-purchase transactions." *See* Cal. Civ. Code § 1812.621. A consumer harmed by violation of this statute, in turn, is entitled to recover "[e]quitable relief as the court deems proper" *Id.* § 1812.636, which includes injunctive relief. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982) ("It goes without saying that an injunction is an equitable remedy."). Furthermore, the legislature has directed that the Act's provisions "shall be liberally construed to achieve its remedial goals." *Id.* § 1812.621. Accordingly, it is properly within a court's discretion to grant a public injunction for violations of the Act.

Finally, like the statutes in *McGill*, any prospective injunctive relief herein under the Karnette Rental-Purchase Act will accrue to the public at large and will affect Blair only incidentally as she has already been harmed by the allegedly wrongful practice. *See McGill*, 2 Cal. 5th at 955. Based on the foregoing, therefore, Blair is within her rights to seek public injunctive relief under the Karnette Rental-Purchase Act.

Usury, on the other hand, is not amenable to public injunctive relief. The legislature has not provided an injunctive remedy for a usury claim. Rather, the typical remedy for violation of California's usury law is to reduce the interest on any loan to zero, and permit the borrower to pay back only the principal. *See Gibbo v. Berger*, 123 Cal. App. 4th 396, 403 (2004); *see also* Uncod. Measures 1919-3 at 51 (2004) (providing for discretionary award of treble damages for violation of usury law). Moreover, the right of recovery "is personal, and is available only to the debtor or his personal representative." *Commercial Credit Co. v. Semon*, 33 F.2d 356, 357

(N.D. Cal. 1928). California's usury law, therefore, does not fit within the exception recognized by *McGill*.[1]

In summary, Blair's public injunctive claims under Section 17200, the CLRA, and the Karnette Rental-Purchase Act fall within the scope of *McGill*. Blair's usury claim, however, is not amenable to public injunctive relief, and RAC did not run afoul of *McGill* by requiring that Blair arbitrate this claims in her individual capacity only. Accordingly, RAC's motion to compel arbitration is **GRANTED** as to Blair's usury claim.

### B. *McGill* Is Not Preempted.

RAC next argues that *McGill* is preempted by the FAA, and Blair's claims must therefore be compelled to arbitration pursuant to the parties' agreement.

RAC's argument relies upon two authorities, neither of which controls here. RAC first cites to *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 935–36 (9th Cir. 2013), for the proposition that *McGill* contravenes the pro-arbitration policy of the FAA, and is consequently preempted (Reply at 3–4). Ferguson, however, is inapplicable here. In *Ferguson*, our court of appeals held that California's *Broughton-Cruz* rule, which prohibited parties from compelling public injunctions to arbitration, was preempted by the FAA because such a rule disfavored arbitration. 733 F.3d at 936. The instant action, however, deals not with a contract that compels public injunctive claims to arbitration, but rather with a contract that would prohibit litigating a public injunctive claim in any forum, including arbitration.

Indeed, this was the very basis upon which *McGill* distinguished its holding from the holdings in *Broughton* and *Cruz*. *McGill*, 2 Cal. 5th at 956 (Because the parties "preclud[ed] McGill from seeking public injunctive relief . . . *in any forum* . . . the *Broughton-Cruz* rule — which applies only when parties have *agreed* to arbitrate requests for such relief — is not at issue."). *McGill* acknowledged that a rule disfavoring arbitration would be impermissible under the FAA. It held, however, that consistent with the Supreme Court's interpretation of the FAA, arbitration agreements, like other contracts, may be invalidated by generally applicable contract

---

[1] Notably, Blair's original complaint, drafted before the decision in *McGill*, did not seek injunctive relief for usury (*see* Dkt. 1 at 15). Only after *McGill* excepted from arbitration claims for public injunction did Blair add this remedy to her complaint.

7

defenses so long as those defenses "place arbitration agreements on an equal footing with other contracts." *Id.* at 962 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). A contract precluding public injunctive relief in any forum falls within this ambit because it runs afoul of the generally applicable contract defense that "a law established for a public reason cannot be contravened by a private agreement." *Ibid*.

Nor is *Mortensen v. Bresnan Commc'ns*, *LLC*, 722 F.3d 1151, 1161 n.14 (9th Cir. 2013) of any help to RAC. In *Mortensen*, our court of appeals held that a Montana rule, which would "bar the arbitration of entire categories of claims" was preempted by the FAA. The Montana rule at issue in *Mortensen* provided that adhesion contracts, which waived the parties' right to a jury trial were unenforceable. This rule, by its very nature, included virtually all arbitration agreements (though Montana courts created an exception for those agreements explained to and initialed by consumers). *Id.* at 1161. *Mortensen* observed that such a rule clearly targeted, and indeed was widely applied to arbitration agreements. *Id.* at 1161. Our court of appeals deemed the rule unenforceable because, despite being framed as a rule of general applicability to contracts, it was aimed at and would disproportionately invalidate arbitration provisions. *Id.* at 1160.

The rule in *McGill*, in contrast, provides that parties *can* compel public injunctive claims to arbitration. It merely prohibits contracts that waive such claims altogether. *McGill* does not violate the FAA's prohibition on rules specifically disfavoring arbitration, and is therefore not preempted by the FAA.

### C. The Arbitration Agreement Impermissibly Precludes Public Injunctive Relief.

The arbitration agreement would preclude Blair from bringing her Section 17200, CLRA, and Karnette Rental-Purchase Act claims in any forum. Accordingly, that portion of the arbitration agreement is invalid, and Blair may bring these claims in court, as now set forth in detail.

The arbitration agreement provided that RAC may elect to arbitrate "claims that are based on any legal theory whatsoever, including . . . any statute, regulation or ordinance" (Dkt. No. 22-1 ¶ B). In the event that a party elects to arbitrate, as RAC has done here, the agreement

provided that arbitration "shall be conducted on an individual basis," that the arbitrator was prohibited from "award[ing] relief that would affect RAC account holders other than [the customer]," and that "There will be no right or authority for any dispute to be brought, heard, or arbitrated as a class, collective, mass, private attorney general, or representative action" (*id.* ¶ D). In summary, once a party selects arbitration, the only form of relief a complainant is permitted to pursue is individual relief (*i.e.* relief on behalf of oneself). RAC's election to arbitrate this dispute would therefore preclude Blair from seeking a public injunction in any forum.

This is exactly the contractual limitation prohibited by *McGill*. Therefore, pursuant to *McGill*, the agreement's preclusion of claims seeking public injunctions is unenforceable.

RAC argues that even if the requirement of individual arbitration is unenforceable, the merits of Blair's claims should be decided by an arbitrator and then, if RAC is found liable, Blair should petition the Court for public injunctive relief (Reply at 5). This procedure, however, would not follow from the terms of the agreement itself. Pursuant to paragraph D, "If there is a final judicial determination that applicable law precludes enforcement of [paragraph D's] limitations as to a particular *claim for relief*, then that *claim* (and only that claim) must be severed from the arbitration and may be brought in court" (Dkt. No. 22-1 ¶ D) (emphasis added).

RAC argues that "the reference . . . to 'claims for relief' simply meant that if the court should find that any limitation to the arbitrator's ability to award 'relief' or a remedy is unenforceable, a request for that particular form of relief (or remedy) must be brought in court" (Reply at 4). This is an unnatural and unpersuasive reading of the contract term. The agreement plainly stated that an unenforceable *claim* must be severed from the contract and decided in court, not a portion of a claim or a remedy (Dkt. No. 22-1 ¶ D). *See Vargas v. Wells Fargo Bank, N.A.*, No. C 12-02008 WHA, 2012 WL 2931220, at *6 (N.D. Cal. July 18, 2012) (distinguishing a claim, which is the substantive legal theory, from a remedy); *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1031 (N.D. Cal. 2013) (Judge Edward Chen) ("[E]quitable relief is not a claim for relief but rather only a remedy.").

Here, three of Blair's claims seek relief not permitted under the arbitration agreement. That prohibition runs afoul of California law. Accordingly, her claims for violations of Section 17200, the CLRA, and the Karnette Rental-Purchase Act "must be severed from the arbitration and may be brought in court" (*see* Dkt. No. 22-1 ¶ D). RAC's motion to compel arbitration is **DENIED** as to Blair's Section 17200, CLRA and Karnette Rental-Purchase Act claims.

### 2. CLASS ACTION CLAIMS.

RAC further argues that the Court should strike Blair's class allegations arising out of the 2015 arbitration agreement because she agreed to waive class claims. It requests that the class claims of any other individuals who signed the arbitration agreement likewise be stricken (Br. at 15).

The agreement provides that "There will be no right or authority for *any dispute* to be brought, heard, *or* arbitrated as a class" (Dkt. No. 22-1 ¶ D). This class action waiver provision, therefore, applies not only to arbitration, but, as clearly stated, to any dispute between Blair and RAC. Accordingly, RAC's motion to strike Blair's class action claims arising from her 2015 agreement is **GRANTED**. Pursuant to her agreement with RAC, Blair must bring these claims in her individual capacity.

RAC's motion to strike class action claims of any other individuals who signed the arbitration agreement is not yet ripe because no other individuals who signed the agreement have moved for relief, and therefore there are no other claims to strike. Accordingly, RAC's motion is **DENIED** insofar as it seeks to strike the class action claims of individuals not parties to this litigation.

### 3. STAY?

RAC contends that any claims not sent to arbitration — including Blair's claims related to the 2016 purchase for which she opted out of arbitration, and other named plaintiffs' claims — should be stayed pending the outcome of arbitration. It first argues that these claims are subject to a mandatory stay under Section 3 of the FAA, which provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the

> issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The mandatory provision, however, only applies to arbitrable claims or issues. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *see also Winfrey v. Kmart Corp.*, No. 16-55184, 2017 WL 2211276, at *1 (9th Cir. May 19, 2017). Therefore, it applies only to Blair's usury claim related to her 2015 purchase, which claim this order compels to arbitration.

RAC further argues that this order should apply a discretionary stay as to all other claims because moving forward with non-arbitrable claims risks litigating the same issues in the arbitral and judicial forum, which will be burdensome on the parties and unnecessarily expend judicial resources. *See Leyva*, 593 F.2d at 863–64.

Here, such a stay is unnecessary. RAC has succeeded in compelling only a single claim to arbitration for violation of California's usury law. The usury claim concerns only Blair's 2015 purchase of her air conditioning unit, and whether the installment payments related to that purchase constitute a loan, which exceeds the interest rate limit established by Article XV of the California Constitution (*see* Sec. Amd. Compl. ¶¶ 99–100). The Karnette Rental-Purchase Act claim, on the other hand, concerns whether RAC exceeded benchmark maximum prices for the various items purchased by Blair, Robinson, and Harris, as well as RAC's compliance with labeling and record-keeping requirements set forth in the Act (*id.* ¶ 86). The CLRA claim also carries a distinct legal concern — whether RAC's contracts contain misleading or unconscionable terms (*id.* ¶ 94). Finally, the Section 17200 claim is predicated on violations of all of the above claims (*id.* ¶ 106). While there will no doubt be some minor overlap in the facts in arbitration and in court, California's usury law is sufficiently distinct from the other consumer protection laws Blair sues under that parallel proceedings will not be unduly duplicative or burdensome. Accordingly, RAC's motion to stay court proceedings is **DENIED**.

11

**CONCLUSION**

For the foregoing reasons, RAC's motion to compel arbitration is **GRANTED** as to Blair's usury claim, and **DENIED** as to Blair's claims under Section 17200 of the California Business and Professions Code, the Karnette Rental-Purchase Act, and the Consumer Legal Remedies Act. RAC's motions to strike Blair's class claims is **GRANTED**. RAC's motion to stay is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 3, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE